**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| AMBER J. CRAMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Cause No.:  4:18-cv-1078 |
| EQUIFAX INFORMATION | ) | |
| SERVICES, LLC | ) | |
| Serve: | ) | |
| CSC Lawyers Incorporating Service | ) | |
| Registered Agent | ) | |
| 221 Bolivar Street | ) | |
| Jefferson City, MO 65101 | ) | |
| | ) | |
| & | ) | |
| | ) | |
| BAY AREA CREDIT SERVICE, LLC | ) | |
| **Serve:** | ) | |
| Corporate Headquarters | ) | |
| 4145 Shackleford Road, Suite 330B | ) | |
| Norcross, GA 30093-3540 | ) | |
| | ) | |
| & | ) | |
| | ) | |
| CONSUMER COLLECTION | ) | |
| MANAGEMENT, INC. | ) | |
| **Serve:** | ) | |
| SPRA Corp. | ) | |
| Registered Agent | ) | |
| 120 S. Central, Suite 1600 | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| Defendants. | ) | |

Now comes Plaintiff, Amber J. Cramer, by and through the undersigned attorneys, and for

her Complaint against Defendants, Equifax Information Services, Inc., Bay Area Credit Service,

LLC, and Consumer Collection Management, Inc., states as follows:

## **INTRODUCTION**

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American citizens.  Data technology, whether it is used by businesses, banks, the Internal Revenue Service or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster and better decision-making by its recipients, and all of society should ultimately benefit from the resulting convenience and efficiency.

2.      Unfortunately, however, this information has also become readily available for, and subject to, mishandling and misuse.  Individual consumers can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.  In fact, Defendant Equifax Information Services, LLC acknowledges this potential for misuse and resulting damage every time it solicits its credit monitoring service to a consumer.

3.      The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information.  Such companies are commonly known as consumer reporting agencies ("CRAs").

4.      These CRAs sell to readily paying subscribers (*i.e.*, retailers, landlords, lenders, potential employers and similar interested parties) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

5.      Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6.      One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

7.      The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.  *We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

8.      In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy."  *See* 15 U.S.C. § 1681(a)(4).

9.      This action seeks compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff, Amber J. Cramer, against Defendants, Equifax Information Services, LLC, Bay Area Credit Service, LLC, and Consumer Collection

Management, Inc., for their respective willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. ("FDCPA") and the Telephone Consumer Protection Act 47 U.S.C. § 227, et seq. ("TCPA").

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681*p*.  Venue in this judicial district is proper because many of the facts relevant to this *Complaint* occurred in this judicial district.

## PARTIES

11.     Plaintiff, Amber Cramer, is an adult individual presently residing in Columbia, Missouri.  Plaintiff is a "consumer" as defined in Section 1681*a*(c) of the FCRA.

12.     Defendant, Equifax Information Services, Inc. ("Equifax"), is a Georgia limited liability company corporation doing business throughout the United States and in the State of Missouri.  Equifax is a "consumer reporting agency" as defined by Section 1681a(f) of the FCRA, and is one of the largest CRAs in the world.

13.     Defendant Bay Area Credit Service is a corporation ("Bay Area") organized and existing pursuant to law, doing business in the State of Missouri.  Bay Area is a "furnisher" of consumer credit information as that term is used in section 1681s-2 of the FCRA.

14.     Defendant Consumer Collection Management ("CCM") is a corporation organized and existing pursuant to law, and doing business in the State of Missouri.  CCM is a "furnisher" of consumer credit information as that term is used in section 1681s-2 of the FCRA.

## FACTUAL ALLEGATIONS

15.     Plaintiff resides in Columbia, Missouri in the County of Boone.

16.      She is a subscriber to a service known as Credit Karma which she uses to monitor her credit reports, and the information contained in them.

17.      In July of 2017, she checked her status on the Credit Karma website, and found that her credit score was lower than it previously had been through the same portal, and that she had an alleged account with SLUCare listed as "delinquent" and/or "in collection."

18.      After investigating the matter, Plaintiff determined that the derogatory account pertained to someone's unpaid medical expenses with SLUCare for services rendered on December 23, 2016. This facility is located in St. Louis, Missouri, approximately 120 miles from Plaintiff's home in Columbia, Missouri. Plaintiff never received any treatment at SLUCare.

19.      In September of 2017 Plaintiff found another "delinquent" and/or "in collection" account on her credit report from St. Alexius Hospital for alleged services rendered on December 23, 2016. Plaintiff never received any treatment St. Alexius Hospital.

20.      In October of 2017 Plaintiff found another "delinquent" and/or "in collection" account on her credit report from American Medical Response for alleged services rendered on December 23, 2016. Plaintiff never received any treatment American Medical Response.

21.       In order to confirm and be certain that she had never received any treatment from these three entities Plaintif reviewed her account with her Group Health Insurer, Anthem Blue Cross Blue Shield, and found no visits to any of those entities. She also confirmed that she was actually at her place of employment working on the date and time that the alleged medical treatment listed by these 3 creditors.

22.      After confirming that she had not received treatment at these facilities, and that these bills did not apply to her, Plaintiff contacted representatives of SLUCare and St. Alexius hospital for the purpose of resolving the matter and having these bills corrected to show that they

did not apply to her. She was advised that someone who received treatment at their facilities allegedly provided Plaintiff's name, date of birth and social security number at the time of treatment, and that if Plaintiff was claiming that she was not the one treated, *i.e.*, her identity had been stolen, she needed to make a police report.

23.     In July 2017, Plaintiff filed the first of three (3) separate police reports relating to the apparent use of her identity to obtain medical services.  The second and third police reports were filed in September and October 2017 respectively.

24.     Also in July 2017, Plaintiff disputed the debts associated with this theft of her identity both via telephone and through the internet with the three major credit reporting agencies, and added a "fraud alert" to her credit report as well.

25.     Plaintiff also completed a detailed ID Theft Affidavit at the request of representatives from St. Alexius.

26.     Plaintiff trusted and believed that, having complied with everything she had been asked and advised to do including, filing police reports and disputing the false information with the CRAs, this would be the end of the matter as to this false information.

27.     Nevertheless, as time passed, Plaintiff discovered that the SLUCare item continued to be reported on Plaintiff's credit reports by defendant CCM, and the American Medical Response item continued to be reported by defendant Bay Area.   In addition, representatives of Bay Area contacted her on her cell phone on numerous occasions in an effort to collect on the American Medical Response debt, even after she had advised its representatives that she was the victim of identity theft and that the debt was not hers.

28.     On November 8, 2017 Plaintiff forwarded another dispute to the CRAs via certified mail through the United States Post Office. She disputed these false items again by

contacting each of the three major CRAs via regular mail, and included copies of the police reports she had filed with respect to each item, and the identity theft affidavit she had prepared at the request of St. Alexius Hospital; Plaintiff also included other documents which supported her assertion that these debts did not belong to her and that each was the result of the theft of her identity.

29.     Much to Plaintiff's relief, she received responses from Experian and TransUnion indicating that all of the trade lines in her report pertaining to the debts from SLUCare, American Medical Response and St. Alexius Hospital and/or their collection agencies had been deleted from her report.

30.     However, much to Plaintiff's dismay, annoyance, and aggravation, by letter dated November 30, 2017, Defendant Equifax advised Plaintiff that it had investigated her disputes, and "verified" as correct the information regarding the SLUCare debt being listed by Defendant CCM and the information regarding the American Medical Response debt being listed by Defendant Bay Area; as such, the false information would stay on her credit report.  Equifax suggested that if Plaintiff wanted additional information, she should contact those two entities.

31.     Plaintiff is at a loss as to what else she can do to correct this ongoing problem. She finds it remarkably unfair and frustrating that other entities with whom she has never chosen to do business can continue to paint her as someone she is not, even though they have been provided proof that Plaintiff is the victim of identity theft.  Plaintiff has been left hopeless and helpless as to restoring her own good name.

### COUNT ONE
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681*c-2*(a), 15 U.S.C. § 1681*e*(b) and 15 U.S.C. § 1681*i*(a)(1)
### (against Defendant Equifax)

32.     Plaintiff hereby incorporates by reference all well-pleaded allegations contained

in the preceding paragraphs as if fully set forth herein.

33.      A "consumer reporting agency" is defined by the FCRA as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.  15 U.S.C. § 1681$a$(f).

34.      Equifax is a "consumer reporting agency" as defined by the FCRA.

35.      Section 1681$n$ of the FCRA imposes civil liability on any person "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681$n$(a).

36.      Section 1681$o$ of the FCRA provides for civil liability against any person which is negligent in failing to comply with any requirement imposed under the Act.

**Equifax's Failure to Block Information Resulting from Identity Theft**

37.       Plaintiff hereby incorporates by reference all well-pleaded allegations contained in the preceding paragraphs as if fully set forth herein.

38.      Section 1681$c$-$2$ of the FCRA mandates that a CRAs "shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the receipt by such agency of – " specified information confirming the theft and identifying the disputed information.  15 U.S.C. § 1681$c$-$2$(a).

39.      Plaintiff is a victim of identity theft as described above.

40.      Equifax prepared and furnished one or more consumer report including information that resulted from this identity theft.

41.      Plaintiff disputed the fraudulent information with Equifax, specifically including

a copy of an identity theft report, *i.e.* a police report.

42.     Equifax did not block the disputed information within four (4) business days of receiving Plaintiff's dispute.

43.     As a direct and proximate result of Equifax's willful and/or negligent refusal to block the disputed information as described above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to loss of opportunity to obtain credit, damage to reputation, expenditure of time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

44.     Upon information and belief, Equifax has been sued on multiple occasions over the past ten (10) years for failing to comply with the express mandates of 15 U.S.C. § 1681*c-2*(a).

45.     Upon information and belief, Equifax has exhibited a pattern of refusing to comply with 15 U.S.C. § 1681*c-2*(a).

46.     Equifax's pattern of refusal to block information resulting from identity theft as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*(a)(2).

## Equifax's Failure To Adopt and/or Follow Reasonable Procedures

47.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. §

1681*e*(b).

48.     On numerous occasions, Equifax has prepared a patently false consumer report concerning Plaintiff.

49.     Despite actual and implied knowledge that Plaintiff's debts with Bay Area and CCM were not Plaintiff's and were attributable to the theft or her identity, Equifax continued to show these debts as unpaid, past due and with balances due, and readily sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

50.     On each such instance, Equifax willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681*e*(b).

51.     Through Plaintiff's communications with Equifax, Equifax knows, or has sufficient reason to know, that when it prepares and sells a consumer report about Plaintiff, the information it is circulating is extremely inaccurate and damaging to Plaintiff. Nevertheless, Equifax has taken no measures to stop painting a false and damaging picture about Plaintiff.

52.     Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful and/or negligent violations of the FCRA including, without limitation, the premiums Plaintiff must spend for a credit monitoring service.

53.     Plaintiff is not currently free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about her.

54.     As a direct and proximate result of Equifax's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically

mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to loss of opportunity to obtain credit, damage to reputation, expenditure of time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

55.     Upon information and belief, Equifax has been sued on multiple occasions over the past ten (10) years for failing to assure the maximum possible accuracy of the reports it prepares about consumers like Plaintiff.

56.     Upon information and belief, Equifax has exhibited a pattern of refusing to follow reasonable procedures as mandated by the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

57.     Equifax's pattern of refusal to follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct, entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*(a)(2).

**Equifax's Failure To Conduct Reasonable Reinvestigations**

58.     The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

59.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the

11

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

60.     Ms. Cramer initiated disputes with Equifax by telephone and on line in the summer of 2017, and again via regular mail in November of 2017. In each of those instances, she advised of the theft of her identity and requested that Equifax correct and/or delete specific items in her credit file that were patently inaccurate, misleading and highly damaging to her.

61.     Plaintiff specifically advised Equifax that mistakes had been made, provided all necessary information to Equifax to support her contention, and requested the trade lines be corrected accordingly, *i.e.*, clear information and evidence that the 2 trade lines in question were not her debts and were placed in her credit file due to identity theft.  Either Equifax conducted *no* investigation of Plaintiff's disputes, or its "investigation" was so shoddy as to allow objectively false and highly damaging information to remain in Plaintiff's credit file.

62.     By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, Equifax willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) with respect to each dispute lodged by Plaintiff.

63.     As a direct and proximate result of Equifax's repeated disregard for each of Plaintiff's disputes as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

64.     As a direct and proximate result of Equifax's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to loss of opportunity to obtain credit, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an

award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681*o*.

65.     Upon information and belief, Equifax has been sued on multiple occasions over the past ten (10) years for falsely reporting debts which were not those of the consumer and for which the consumer was victimized by identity theft.

66.     Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false information contained in such files, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

67.     Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*.

**WHEREFORE**, Plaintiff respectfully prays this Court for judgment in her favor and against Defendant Equifax, and for the following relief:

A)     Actual damages in an amount to be proved at trial;

B)     Punitive damages as provided for by 15 U.S.C. § 1681*n*(2);

C)     Statutory damages as provided for by 15 U.S.C. § 1681*n*(2);

D)     Costs and attorneys' fees as provided for by 15 U.S.C. § 1681*n*(3) and 15 U.S.C. § 1681*o*(2); and

E)     Such other and further relief as this Court deems just and proper.

## COUNT TWO
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692
### (against Defendant Bay Area Credit Services)

68.      In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Complaint as if fully set forth herein.

69.      Defendant Bay Area's actions violated the FDCPA.  The violations include, but are not limited to, the following:

(a)      Defendant Bay Area violated 15 U.S.C. § 1692e of the FDCPA when it made false, misleading, and/or deceptive statements in an effort to collect a debt and false, misleading and deceptive means in an effort to collect a debt;

(b)      Defendant Bay Area violated 15 U.S.C. § 1692e(2) of the FDCPA when it placed a debt trade line on Plaintiff's credit report with defendant Equifax and possibly others which asserted that Plaintiff owed a debt to an entity known as American Medical Response when no such obligation existed at the time and continues to list said trade line even though it is aware of the facts which demonstrate that the debt in question resulted from the theft of Plaintiff's identity;

(c)      Defendant violated 15 U.S.C. § 1692e(8) when it listed the American Medical Response debt as an obligation which was due and owing and more than 180 days past due with the credit reporting agencies, including defendant Equifax when it knew or should have known that the debt in question was not Plaintiff's debt and had resulted from the theft of Plaintiff's identity;

(d)      Defendant's actions violated 15 U.S.C. § 1692f as they were unfair and unconscionable means to collect the debt.

70.      As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for actual damages, statutory damages, and costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

A)      Actual damages;

B)      Statutory damages pursuant to 15 U.S.C. § 1692k;

C)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k;

D)      For such other and further relief as may be just and proper.

### COUNT THREE
### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227(b)
### (against Defendant Bay Area Credit Services)

71.     In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Complaint as if fully set forth herein.

72.     The Telephone Consumer Protection Act, 47 U.S.C. §227(b) ("TCPA"), restricts the use of automated equipment and prerecorded voice messages to dial cellular telephones. Calls to cell phones using predictive dialing equipment are prohibited unless the caller or creditor has the "prior express consent" of the called party to make the automated calls.

73.     Beginning on July 14, 2017 defendant Bay Area began attempts to collect on the American Medical Response debt which Plaintiff did not owe by placing calls to Plaintiff's cellular phone using either an automatic dialer or predictive dialer.  Plaintiff's cellular phone number is (573) xxx-1031.

74.     Plaintiff never provided any prior express consent authorizing Bay Area or American Medical Response, since she never received any service from either entity and had no prior contact with either entity.  Upon information and belief Plaintiff asserts that Defendant Bay Area used either a skip trace or a phone number capturing software to obtain Plaintiff's cell number. Plaintiff did not voluntarily of willing provide her cell phone number, and never provided any consent to be contacted on her cell through the use of an automatic or predictive dialer.

75.     On more than one occasion, Plaintiff advised the Bay Area representative/collector that she had been the victim of identity theft, that the debt in question was not hers, and that she did not want to be contacted about this debt going forward.

Nonetheless, Bay Area and its representatives continued to call her on her cell phone regarding this debt.

76.     The TCPA was designed to prevent calls like these, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

77.     In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

78.     Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

79.     Despite lacking the necessary prior excess consent and being advised by Plaintiff that the debt was not hers and that it was attributable to the theft or her identity and Plaintiff's request that it stop calling her about the debt, Bay Area and its representatives continued to place calls to Plaintiff's cellular phone using either an automatic dialer or predictive dialer.

80.     The industry standard for collection calls is to place them through the use of automated dialers.  Therefore, it is believed, and averred, that the calls made to Plaintiff's cell phone were made using either an automatic telephone dialing system or a predictive dialing system, as that term  is defined in 47 U.S.C. § 227(a)(1).

81.     These telephone calls were not made for "emergency purposes", as  defined in 47 C.F.R. § 64.1200.

82.     All of the telephone calls made by defendant Bay Area to Plaintiff were not made with  the Plaintiff's prior express consent.

83.     The FCC has previously discussed the terms willfully and knowingly with  respect to the Act in an informal staff opinion.

84.     In the informal opinion, the FCC has stated that "the term 'willful' has  been interpreted to mean simply that 'the acts or omissions are committed knowingly. It is not pertinent whether or not the [ . . . ] acts or omissions are  intended to violate the law."  In addition, the FCC stated that the term  "knowingly" is equivalent to "willful."

85.     Defendant Bay Area clearly lacked the requisite prior express consent to contact Plaintiff through the use of an automatic or predictive dialer. In addition, Defendant Bay Area continued to place these automated calls to Plaintiff's cell phone after it knew that the debt in question was not Plaintiff's and came about as a result of the theft of Plaintiff's identity.

86.     As Defendant Bay Area intended to place these calls to Plaintiff when it knew or should have known that it was lacking the requisite prior express consent, and also placed calls when it knew or should have known that the debt did not belong to Plaintiff and was brought about by the theft of Plaintiff's identity and it was told to cease and desist from calling her about

the debt, she is entitled to increased damages, as these calls were made willfully and/or knowingly.

      **WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against defendants for:

      A)      Statutory damages;

      B)      An injunction against further violations;

      C)      A declaration that defendant's equipment and messages are regulated by the TCPA;

      D)      Costs of suit;

      E)      Reasonable attorney's fees;

      F)      Such other or further relief as the Court deems just and proper.

## COUNT FOUR
## VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681*s-2*(b)
## (against Defendant Bay Area Credit Services)

87.      In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Complaint as if fully set forth herein.

88.      Bay Area Credit Service is a "furnisher" as defined by the FCRA.

89.      Section 1681*n* of the FCRA imposes civil liability on any person "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

90.      Section 1681*o* of the FCRA provides for civil liability against any person which is negligent in failing to comply with any requirement imposed under the Act.

91.      Defendant Bay Area Credit Services was acting as a furnisher of credit information as term is defined by the FCRA.

92.      Plaintiff disputed information provided by Bay Area through the on line dispute process at Equifax and through letters to the credit bureau as required by the FCRA.

93.     Upon information and belief, the credit bureau forwarded the dispute to Bay Area as required by the FCRA, 15 U.S.C. § 1681i.

94.     Upon information and belief, Bay Area willfully failed to investigate the dispute and to review all relevant information provided as required by the FCRA, 15, U.S.C. § 1681s-2(b). In the alternative and upon information and belief, Bay Area negligently failed to investigate the dispute and review all relevant information provided as required by the FCRA, 15, U.S.C. § 1681s-2(b).

95.     Upon information and belief and in the alternative, Bay Area, after conducting its investigation or without conducting any investigation, willfully failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know it was inaccurate.

96.     Upon information and belief and in the alternative, Bay Area, after conducting its investigation or without conducting any investigation, negligently failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know it was inaccurate.

97.     Bay Area's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton  misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681$n$.

**WHEREFORE**, Plaintiff respectfully prays this Court for judgment in her favor and against Defendant Bay Area Credit Service, and for the following relief:

A)     Actual damages in an amount to be proved at trial;

B)     Punitive damages as provided for by 15 U.S.C. § 1681$n$(2);

C)      Statutory damages as provided for by 15 U.S.C. § 1681*n*(2);

D)      Costs and attorneys' fees as provided for by 15 U.S.C. § 1681*n*(3) and 15 U.S.C. § 1681*o*(2); and

E)      Such other and further relief as this Court deems just and proper.

## COUNT FIVE
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692
## (against Defendant Consumer Credit Management, Inc.)

98.     In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Complaint as if fully set forth herein.

99.     Defendant CCM's actions violated the FDCPA.  The violations include, but are not limited to, the following:

(a)      Defendant CCM violated 15 U.S.C. § 1692e(2) of the FDCPA when it placed a debt trade line on Plaintiff's credit report with defendant Equifax and possibly others which asserted that Plaintiff owed a debt to an entity known as SLUCare when no such obligation existed at the time and continues to list said trade line even though it is aware of the facts which demonstrate that the debt in question resulted from the theft of Plaintiff's identity;

(b)      Defendant violated 15 U.S.C. § 1692e(8) when it listed the SLUCare debt as a debt which was due and owing and more than 180 days past due with the credit reporting agencies, including defendant Equifax when it knew or should have known that the debt in question was not Plaintiff's debt and had resulted from the theft of Plaintiff's identity;

(c)  Defendant's actions violated 15 U.S.C. § 1692f as they were unfair and unconscionable means to collect the debt.

100.     As a result of the above violations of the FDCPA, the Defendant is liable to the Plaintiff for actual damages, statutory damages, and costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant for the following:

A)      Actual damages;

B)      Statutory damages pursuant to 15 U.S.C. § 1692k;

C)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k;

D)      For such other and further relief as may be just and proper.

### COUNT SIX
### VIOLATION OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681*s-2*(b)
### (against Defendant Consumer Credit Management, Inc.)

101.    In this Count, Plaintiff hereby re-alleges and incorporates by reference each of the other allegations contained in this Complaint as if fully set forth herein.

102.    Consumer Credit Management is a "furnisher" as defined by the FCRA.

103.    Section 1681*n* of the FCRA imposes civil liability on any person "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

104.    Section 1681*o* of the FCRA provides for civil liability against any person which is negligent in failing to comply with any requirement imposed under the Act.

105.    Defendant Consumer Collection Management, Inc. was acting as a furnisher of credit information as term is defined by the FCRA.

106.    Plaintiff disputed information provided by CCM through the online dispute process at Equifax and through a letter to the credit bureau as required by the FCRA.

107.    Upon information and belief, the credit bureau forwarded the dispute to CCM as required by the FCRA, 15 U.S.C. § 1681i.

108.    Upon information and belief, CCM willfully failed to investigate the dispute and to review all relevant information provided as required by the FCRA, 15, U.S.C. § 1681s-2(b).  In the alternative and upon information and belief, CCM negligently failed to investigate the dispute and review all relevant information provided as required by the FCRA, 15, U.S.C. § 1681s-2(b).

109.    Upon information and belief and in the alternative, CCM, after conducting its investigation or without conducting any investigation, willfully failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know it was inaccurate.

110.    Upon information and belief and in the alternative, CCM, after conducting its investigation or without conducting any investigation, negligently failed to modify, delete, or block the reporting of the disputed information despite knowing or having reason to know it was inaccurate.

111.    CCM's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton  misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681*n*.

**WHEREFORE**, Plaintiff respectfully prays this Court for judgment in her favor and against Defendant Bay Area Credit Service, and for the following relief:

A)      Actual damages in an amount to be proved at trial;

B)      Punitive damages as provided for by 15 U.S.C. § 1681*n*(2);

C)      Statutory damages as provided for by 15 U.S.C. § 1681*n*(2);

D)      Costs and attorneys' fees as provided for by 15 U.S.C. § 1681*n*(3) and 15 U.S.C. § 1681*o*(2); and

E)      Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**HEALEY LAW, LLC**

/s/ Robert T. Healey
Robert T. Healey, Esq.    EDMO No. 34138MO
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone: (314) 401-3261
Facsimile: (636) 590-2882
Email: bob@healeylawllc.com

Sylvia A Goldsmith (*ProHacVice motion to come*)
**GOLDSMITH & ASSOCIATES, LLC**
20545 Center Ridge Rd., Suite 415
Rocky River, OH 44116
Telephone: (440) 934-3025
Facsimile: (440) 934-3026
E-mail: goldsmith@goldsmithlawyers.com

Counsel for Plaintiff

**JURY DEMAND**

Plaintiff respectfully demands a trial by jury on all issues so triable in this lawsuit, this 2d

day of July, 2018.

/s/ Robert T. Healey
Robert T. Healey, Esq.