**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

AMBER J. CRAMER,                        )
                                        )
            Plaintiff,                  )        Case No. 4:18-cv-01078-CAS
                                        )
    v.                                  )
                                        )
EQUIFAX INFORMATION SERVICES,           )
LLC, et al.                             )
                                        )
            Defendants.                 )

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO**
**EXCLUDE THE TESTIMONY OF EVAN HENDRICKS**

Plaintiff, Amber J. Cramer, by and through the undersigned, for her *Response in
Opposition to Defendant's Motion to Exclude the Testimony of Evan Hendricks*, respectfully
states as follows:

I.      **INTRODUCTION**

Evan Hendricks is one of the foremost experts in the country on the consumer reporting
industry. He has been admitted to testify at trial by numerous Federal and State courts around the
country to assist juries in understanding the complex, misunderstood, and incredibly opaque
consumer reporting industry as governed by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.
§1681 *et seq.*, including typical procedures, policies, and consumer reporting industry standards
that are unknown to a typical layperson. Mr. Hendricks has been recognized as an expert in this
industry by Congress, the Federal Trade Commission, the Social Security Administration, by
consumer reporting agencies themselves, and by the Ninth and Fourth Circuit Courts of Appeals.

Faced with qualifications above reproach, Defendant, Bay Area Credit Service, LLC,
seeks to exclude Mr. Hendricks' testimony here on strained arguments that: (1) Mr. Hendricks

1

has "no education or real-world experience in investigations" under the FCRA, *see, e.g.*, Def. Memo. [Dkt. 83] at 1-2; and (2) the FCRA does not require Defendant to have conducted a "reasonable investigation" anyways. *Id.* at 3. As will be shown below, Defendant completely misses the mark on both the standard for admissibility of Mr. Hendricks' testimony here, and what the FCRA requires of Defendant upon receipt of a consumer dispute under the FCRA. When considered under the correct standards at issue here, it is not a close call that Mr. Hendricks' should be permitted to testify without limitation at trial on all issues enumerated in his expert report. *See generally* Hendricks Expert Report [Dkt. 83-2].

## II.    MR. HENDRICKS IS QUALIFIED AND HIS OPINIONS ARE RELIABLE BECAUSE OF HIS SPECIALIZED KNOWLEDGE AND EXTENSIVE EXPERIENCE.

### A.    Standard for Expert Qualification.

Under FRE 702, an expert may be qualified because of specialized knowledge, skill, experience, training or education. The basis for expert testimony may focus on personal knowledge or experience. *See Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999). The Rule 702 inquiry is flexible because there are many different kinds of experts, and many different kinds of expertise. *Id.*, citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 594 (1993). "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." FRE 702 Committee Notes.

The trial court has broad discretion in considering whether to qualify an expert. *Wagner v. Hesston Corp.*, 450 F.3d 756, 758 (8th Cir. 2006)(citing *Kumho Tire Company*, *supra*, 526 U.S. at 150. *See also Smith v. Ingersoll-Rand Company*, 214 F.3d 1235, 1243 (10th Cir. 2000) (*Kumho* also makes it clear that the gatekeeping function is a flexible and common sense undertaking).

Cases interpreting and applying *Daubert* have emphasized that the court has broad discretion in determining whether an expert's opinion is reliable. *See United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) ("A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."). Reliability is not restricted to the scientific method, but "may focus upon personal knowledge or experience." *Kumho Tire Company*, *supra*, 526 U.S. at 150.

### B.   Numerous Courts Have Admitted Mr. Hendricks to Testify Regarding the Importance of Accuracy Under Consumer Reporting Industry Standards, and the Breach of those Standards.

Mr. Hendricks has been admitted as an expert in numerous Federal and State courts on consumer reporting standards, investigations, identity theft, and the fundamental importance of credit report accuracy in consumer lending issues. A complete list of the cases in which he has offered testified as an expert is contained in his curriculum vitae, included with his expert report. *See, e.g.*, Hendricks Expert Report [Dkt. 83-2] at 35-38.

Mr. Hendricks has testified as an expert in at least seventeen (17) consumer reporting industry *trials[1]* that implicate the FCRA:

- *Daugherty v. Ocwen Loan Servicing, LLC*, S.D. WVa, Case No. 5:14-CV-24506
- *Zabriskie v. Federal National Mortgage Association*, D. Az., No. CV-13-02260-PHX-SRB
- *Miller v. Equifax Information Services, LLC*, D. Ore., Case No. 3:11-CV-1231-BR
- *Drew v. Equifax Information Services, LLC*, N.D. Cal., Case No. C-07-00726-SI
- *Campbell v. Experian Information Solutions*, W.D. Mo., Case No. 07-2514
- *Gamby v. Equifax Information Services*, E.D. Mich., Case No. CV-06-11020-MO
- *Adams v. National Engineering Service Corp./Verifications Inc.*, D. Conn., Case No. 3:07-cv-01035-JCH
- *Holmes vs. TeleCheck Intl., Inc.*, M.D. Tenn., Case No. 3:05-0633

---

[1] Mr. Hendricks was was called to the stand in his eighteenth (18) trial implicating the FCRA, namely in *Sponer v. Wells Fargo Bank, N.A.*, D. Ore., Case No. 3:17-cv-02035, which commenced on Tuesday, August 27, 2019. Overruling Wells Fargo's objections, the court determined that Mr. Hendricks is allowed to offer testimony regarding industry "standards and whether the standards were met[,]" and also "that based on his experience and research and education, that people who have gone through this suffer these kind of harms." *Id.*, Pre-trial Transcript at 73-74 (excerpt attached as Exhibit 1).

- *Williams v. Equifax Information Services*, Orange Co. Circ. Ct., Florida, Case No. 48-2003-CA-9035
- *Valentine v. Equifax Information Services*, D. Ore., Case No. CV-05-801-JO
- *Robinson v. Equifax Information Services*, E.D. Va., Case No. 1:06-cv-1336
- *Cortez v. Trans Union*, E.D. Pa., Case No. 2:05-CV-05684-JF
- *Sloane v. Equifax Information Services*, E.D. Va., Case No. 1:05-cv-1272
- *Kirkpatrick v. Equifax Information Services*, D. Ore., Case No. CV-02-1197-MO.
- *Toler v. Experian Information Solutions, Inc.*, W.D. Ark., Case No. 12-6032.
- *Terry v. Star Consulting*, Prince George's Co. Circ. Ct., Maryland
- *Haberman v. PNC Mortgage Company*, E.D. Tex., Case No. 4:11-cv-126
- *Vernon Singleton v. Universal Credit Services*, E.D. Pa., Case No. 2:14-cv-06380

On at least two occasions, federal Circuit Courts of Appeals specifically have evaluated Mr. Hendricks' qualifications to offer testimony in cases involving FCRA issues implicated in the instant case. *See Andrews v. TRW, Inc.*, 225 F.3d 1063 (9th Cir. 2000), rev'd on other grounds 534 U.S. 19, 122 S. Ct. 441 (2001); *Daugherty v. Ocwen Loan Servicing, LLC*, 701 Fed. Appx. 246, 2017 U.S. App. LEXIS 13521 (4th Cir. 2017).

In *Andrews*, *supra*, the consumer, an identity theft victim like Plaintiff here, claimed that TRW (Experian's predecessor) violated the FCRA by releasing her credit reports to creditors who were dealing with the person who had stolen the consumer's identity. The trial court made various rulings on the merits of the case, and concluded that Mr. Hendricks should not testify. The Ninth Circuit reversed that ruling noting that Mr. Hendricks' opinions would be useful to the jury:

> It is quintessentially a job for a jury to decide whether identity theft has been common enough for it to be reasonable for a credit reporting agency to disclose credit information merely because a last name matches a social security number on file. In making that determination the jury would be helped by the expert opinion on the prevalence of identity theft, as the district court would have been helped if it had given consideration to the plaintiff's witnesses on this point before giving summary judgment.

*Andrews*, *supra*, 225 F.3d at 1067. As in *Andrews*, it will be helpful to the jury in the case *sub judice* to have Mr. Hendricks' testimony about the context and prevalence of identity theft in

judging Defendant's conduct with respect to handling Plaintiff's dispute – a dispute that centered

on the fact that it was an identity thief, not Plaintiff, who incurred the medical debts upon which

Defendant was attempting to collect.

In *Daugherty*, *supra*, the Fourth Circuit specifically evaluated Mr. Hendricks' expert

testimony "regarding the reasonableness of [a furnisher defendant's] investigations" under 15

U.S.C. § 1681s-2(b), the precise question at issue here. *See Daugherty*, 701 Fed. Appx. at *255.

In concluding that Mr. Hendricks' testimony was properly admitted at trial, the court reasoned:

> We recognize the general rule that expert witnesses are not permitted to "state[] a
> legal standard or draw[] a legal conclusion." *United States v. Offill*, 666 F.3d 168,
> 175 (4th Cir. 2011) (quoting *United States v. McIver*, 470 F.3d 550, 562 (4th Cir.
> 2006)). However, Hendricks' testimony did not violate this general rule.
> Reasonableness is a subject on which experts routinely testify. *See United States
> v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (holding that an expert could properly
> give his opinion whether certain actions by the defendant were "reasonable" in
> light of defendant's legal obligations under section 510(k) of the Food, Drug, and
> Cosmetic Act, 21 U.S.C. § 360(k)). Here, Hendricks' testimony addressed the
> reasonableness of [Defendant's] conduct in light of the regulatory framework of
> the FCRA. This testimony did not draw legal conclusions but was offered as an
> explanation why [Defendant's] cursory investigation in response to the dispute
> verification requests was deficient.

*Daugherty*, 701 Fed. Appx. at *254-55. These identical arguments are made here by

Defendant, *see, e.g.*, Def. Memo. [Dkt. 83] at 7-8, and should be rejected for the same

reasons enunciated by the Fourth Circuit.

Finally, Mr. Hendricks has been recognized in Missouri as an expert qualified to

provide testimony not only as to basic context and methodology of consumer reporting in

general, but also with respect to "reasonableness of the investigation" and "testimony

regarding other consumer damages" in particular. *See, e.g., Campbell v. Experian

Information Solutions, Inc.*, Case No. 2:08-cv-04217-NKL, Order dated December 4, 2009

[Dkt. 199] at 1 (attached

6

as Exhibit 2). Again, these are two identical issues challenged by Defendant here, *see* Def.

Memo. [Dkt. 83] at 3-5, 8-9, both of which have been rejected in Missouri.[2]

### C.    Mr. Hendricks Is a Leading and Widely Recognized Expert on Consumer Reporting Through More than Forty Years of Knowledge, Research and Reporting on the Subject.

### 1.    Mr. Hendricks Is Extensively Published on Consumer Reporting Issues.

Mr. Hendricks' specialized experience and knowledge goes beyond his involvement in

dozens of FCRA cases. He has closely studied the credit reporting industry for 41 years,

including as the Editor/Publisher of *Privacy Times*, a Washington, D.C. subscription-based bi-

weekly professional newsletter which regularly included articles about credit reporting from

1981 through 2013. He also wrote the authoritative book on credit reporting: *Credit Scores and*

*Credit Reports: How the System Really Works, What You Can Do* (1st Edition, 2004, 3rd Edition

---

[2] Defendant suggests that Mr. Hendricks should not be permitted to offer any opinions about whether Plaintiff's claimed damages are consistent with others who have suffered credit damage from credit report inaccuracy. *See* Def. Memo. [Dkt. 83] at 8. However, Mr. Hendricks is not being offered to say that Plaintiff has or has not suffered such damages, but rather to provide context for the types of damages that are common to victims of credit reporting errors, and the foreseeability of such harm to Defendant when considering its course of conduct. In this regard, courts routinely reject *Daubert* challenges to Mr. Hendricks' testimony on such topics:

> [Mr. Hendricks] is qualified to talk about damages typically suffered by victims of credit reporting inaccuracies. His knowledge and experience may help the jury contextualize and make sense of complicated information. The Court is aware, however, that testimony of this nature may stray into speculation or may be inadmissible for other reasons. Such evidentiary objections can be handled at trial. Accordingly, at this stage of the litigation process, the Court finds that Mr. Hendricks is qualified to provide testimony about damages.

*Ma v. Equifax Info., Servs., LLC*, 288 F.Supp. 3d 1360, 1366 (N.D. Ga. 2017).

> [Defendant's] motion is DENIED to the extent Mr. Hendricks seeks to testify generally about the types of harm consumers suffer as a result of damages to their creditworthiness. Given his extensive experience in the field, Mr. Hendricks can reliably testify as a witness on the impacts of harm to creditworthiness on consumers. He has been allowed to testify about such issues in the past. For example, Mr. Hendricks can testify that harm to creditworthiness can make it more difficult to get a loan and that consumers have reported feeling sadness as a result of this harm.

*Sandigo v. Ocwen Loan Servicing, LLC*, Case No. 5:17-cv-02727, Order re: Motions *in Limine* [Dkt. 194] (N.D. Cal. 2019) (attached as Exhibit 3).

> Mr. Hendricks is HEREBY PERMITTED to offer opinions on the following objective topics relating to [Plaintiff's] claims damages, including: (1) the chilling effects of anticipated credit problems which might prevent the consumer from applying for credit in the future because a lender in one way or another will ask about delinquencies and foreclosures and because there are penalties for not answering those questions truthfully; (2) debt collection efforts, such as, calls and letters, and (3) expended time and energy to correct errors no of one's making.

*Barnett v. JP Morgan Chase Bank, N.A.*, Case No. 1:12-CV-1745-VEH, Memorandum Opinion and Order [Dkt. 101] (N.D. Ala. January 16, 2014) (attached as Exhibit 4). *See also Sponer, supra.*

2007), nearly 400 pages in length, and containing chapters addressing the issues implicated in this case, including privacy, the importance of accuracy, and the vital consumer reporting industry standards to provide a mechanism for consumers to dispute inaccurate information reported about them.

>2.  **Congress Has Recognized Mr. Hendricks' Expertise.**

Mr. Hendricks has been asked more than 10 times by both houses of Congress to testify concerning the consumer reporting industry and financial privacy. In 2003, for instance, Mr. Hendricks was one of only six witnesses the Senate Banking Committee invited to testify on proposed amendments to the FCRA which were enacted as FACTA. At this hearing, Senator Paul S. Sarbanes expounded on Mr. Hendricks' particular expertise.

>Mr. Hendricks was the founder of the *Privacy Times* newsletter, has been its editor for 23 years, and has testified before Congress a number of times on Fair Credit Reporting Act issues. His expertise has been helpful in the past, and I am sure will continue to be helpful as the committee examines the functioning of the credit reporting system and the ways in which consumer's credit reports are affected." *See*, *Accuracy of Credit Report Information and the Fair Credit Reporting Act: Hearing Before the U.S. Senate Committee on Banking, Housing and Urban Affairs*, July 10, 2003 (Statement of Senator Sarbanes).

That same year, Mr. Hendricks testified three more times before Congress and once for the FTC as it developed amendments to the FCRA. Some of Mr. Hendricks' recommendations were incorporated into the amendments to the FCRA enacted in 2003. In 2005, Mr. Hendricks testified three more times before Congress on credit reports and related issues. In June 2006, he testified in a House Energy and Commerce Subcommittee hearing on "Privacy in the Commercial World II." In June 2007, he testified in the House Financial Services Committee hearing, "Credit Reports: Consumers' Ability to Dispute and Change Information." In July 2008, he testified at the only hearing on credit reporting and scoring issues held by Congress that year.

### 3.   The FTC Has Recognized Mr. Hendricks' Expertise.

The Federal Trade Commission FTC hired Mr. Hendricks in an action it brought against Accusearch for violation of the FTC Act, involving the privacy of telephone records. *FTC v. Accusearch, Inc.*, Case No. 06-CV-105-D (D. Wy.) (attached as Exhibit 5) at pp. 4-5. Accusearch sought to exclude Mr. Hendricks' testimony. The court denied the motion, finding that Mr. Hendricks was qualified as an expert on the confidentiality of telephone records and the harms caused by release of those records.

### 4.   The Social Security Administration Recognizes Mr. Hendricks' Expertise.

Since August 1998, Mr. Hendricks has served under contract as a member of the Social Security Administration's Panel of Privacy Experts. As a panel member, he advises the agency on a host of issues related to the confidential nature of the information maintained by the agency.

### 5.   Equifax and Experian Have Recognized Mr. Hendricks' Expertise.

Finally, Equifax has recognized Mr. Hendricks as an expert on privacy issues. In its 1990 publication "The Equifax Report on Consumers in the Information Age," Equifax listed Mr. Hendricks as a privacy expert and expressed appreciation for his advice in that report. *See* Hendricks' Expert Report [Dkt. 83-2] at 30.[3] Another of the other "Big Three" credit reporting agencies, Experian, has recognized also Mr. Hendricks as an expert in the credit reporting field. In 2002, Experian asked him to serve on its Consumer Advisory Council, which addressed various credit reporting, marketing and privacy-related topics. *Id.*

### D.   Mr. Hendricks Possesses Specialized Knowledge Despite the Secrecy Maintained by the Consumer Reporting Industry

The consumer reporting industry tries to maintain tight control and secrecy over the

---

[3] Mr. Hendricks was a founding consultant to ID Watchdog, an identity theft services company that Equifax purchased in 2017 for $62 million.

operations of its industry. Three large national repositories dominate the consumer credit reporting field – Equifax, Experian and Trans Union – and they protect their companies' proprietary data very carefully. So too do the furnishers who report information to the Big Three, like Defendant here. An outsider is simply not allowed access to consumer reporting agency industry's operations. For that reason, Mr. Hendricks is nearly unique in his knowledge and understanding across credit bureaus and furnishers alike.

Through Mr. Hendricks' role as an expert witness in dozens of consumer credit reporting cases, he has reviewed countless deposition transcripts from employees of credit reporting agencies. He has examined thousands of pages of the agencies' internal documents. Access to this volume of information is nearly impossible for anyone other than a credit reporting agency employee. This information is not available to the public because of the credit reporting agencies' policies to demand that testimony and documents be placed under protective orders.

Only an expert like Mr. Hendricks can assimilate this huge body of knowledge into a useful context, based on his experience with industry groups and with Congressional hearings on the credit reporting industry. In *Kirkpatrick, supra,* the court explicitly recognized this unique aspect of Mr. Hendricks' experience in ruling his testimony was admissible and helpful to the jury:

> The sources of his study are sufficient to qualify him as an expert both with regard to what he has read, and that includes not only his own paper that he puts out, but the deposition testimony is a sufficiently precise and unavailable source of expertise that it would be helpful to the jury to hear from someone who has assimilated that sort of information."

*Kirkpatrick*, *supra*, Order dated January 17, 2015 at 3 (attached as Exhibit 6). *See also Anderson v. Equifax Information Services, LLC*, 2018 WL 1542322, *4 (March 29,

2018) (finding over thirty years of experience beyond acting as an expert witness

sufficiently establish his specialized knowledge useful to a jury).

## III.    THE FCRA REQUIRES FURNISHERS TO CONDUCT AN INVESTIGATION OF CONSUMER DISPUTES TO ASSURE MAXIMUM POSSIBLE ACCURACY OF CONSUMER CREDIT REPORT INFORMATION.

Desperate to avoid having Mr. Hendricks put into context for the jury just how blatant

Bay Area's disregard for the law was here, Defendant seeks to reframe what the standard

actually is by suggesting that accuracy is not at issue here, *see* Def. Memo. [Dkt. 83] at 5-6, and

arguing that the FCRA does not require Bay Area to have conducted a "reasonable investigation"

upon receipt of Plaintiff's dispute. *Id.* at 3. Nothing could be further from the truth.

### A.    The FCRA is Premised on the Importance of Accuracy.

Our banking system is dependent upon lending decisions being made on accurate

information. *See* 15 U.S.C. § 1681(a)(1) ("Inaccurate credit reports directly impair the efficiency

of the banking system . . . ."). Through passage of the FCRA, Congress expressed the need and

its intention to protect the integrity of this system by imposing "grave responsibilities" on entities

who inject information into the lending decision making process:

> It is the purpose of this title to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this title.

15 U.S.C. § 1681(b).

The FCRA "was crafted to protect consumers from the transmission of inaccurate

information about them" and "to establish credit reporting practices that utilize accurate,

relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Information Company*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Kates v. Croker National Bank*, 776 F.2d 1396, 1397 (9th Cir. 1985); *St. Paul Guardian Ins. Co. v. Johnson*, 884 F.2d 881, 883 (5th Cir. 1989)).

While it has been almost fifty (50) years since the FCRA was passed, its protections (as strengthened with amendments in 1996 and 2003) are of significant relevance and perhaps of even greater necessity today in our ever-changing information-sharing age:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) (quoting 116 Cong. Rec. 36570 (1970)). *See also Gorman, supra,* 584 F.3d at 1153-54; *Treadway v. Gateway Chev. Olds.*, *Inc.*, 362 F.3d 971, 981-82 (7th Cir. 2004); *Dalton v. Cap. Assoc. Indus., Inc.*, 257 F.3d 409, 414-415 (4th Cir. 2001)).

Thus, irrespective of the fact that a consumer lacks a private right of action under 15 U.S.C. § 1681s-2(a), it cannot be refuted that Defendant was obligated at all times relevant here to make sure that it reported only accurate information pertaining to Plaintiff. That is necessary context for an evaluation not only of whether Defendant acted reasonably in handling Plaintiff's dispute, but also whether its conduct runs afoul of various provisions under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which is another of Plaintiff's claims. As discussed above, Mr. Hendricks is uniquely qualified to provide regulatory and industry context to assist the jury in evaluating Defendant's conduct here. *See, e.g.*, *Kirkpatrick, supra*, at 3 ("There's a context of congressional action, industry issues and identity theft as a nationwide problem that would be helpful to the jury to hear from someone who has studied

these issues.").

**A Furnisher's Investigation Necessarily Must be Reasonable.**

Plaintiff's specific FCRA claim against Bay Area arises under 15 U.S.C. § 1681s-2(b). "[T]o establish a claim against a credit furnisher for violating § 1681s-2(b), a plaintiff must establish the following: (1) a dispute regarding the accuracy of completeness of information with a CRA; (2) notice from the CRA to the furnisher of the dispute; (3) and the furnisher failed to investigate, correct any inaccuracies, or notify the CRA of the results of the investigation." *Foster v. Exeter Finance LLC*, Case No. 4:18-CV-1014-CDP (E.D. Mo., December 12, 2018). The first two prongs of this test are not at issue here.

However, hoping to prevent Mr. Hendricks from testifying, Defendant asserts that "the FCRA standard for investigation by furnishers does not require a 'reasonable investigation,' requiring exclusion of Mr. Hendricks' testimony on that issue." Def. Memo. [Dkt. 83] at 3. Defendant grossly has misstated the standard at issue in this case.

Courts overwhelmingly have adopted a "reasonable investigation" standard under 15 U.S.C. § 1681s-2(b). In fact, of the eight (8) circuit courts to have addressed the issue, *all eight of them* – including the controlling Eighth Circuit Court of Appeals – have acknowledged this "reasonable investigation" standard. *See, e.g., Hinkle v. Midland Credit Management, Inc.*, 827 F.3d 1295, 1302 (11th Cir. 2016 ("we conclude that 'reasonableness' is an appropriate touchstone for evaluating investigations under § 1681s-2(b)"); *Boggio v. USAA Fed. Savings Bank*, 696 F.3d 611, 616 (6th Cir. 2012) ("We join every circuit to have addressed this duty in holding that the investigation an information furnisher undertakes must be a reasonable one"); *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 908-909 (8th Cir. 2011) ("a furnisher's obligation to conduct a reasonable investigation under § 1681s-2(b) arises when it receives a notice of dispute from a

CRA"); *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 359 (3d Cir. 2011) (liability

arises "when the furnisher fails to undertake a reasonable investigation"); *Chiang v. Verizon New*

*England Inc.*, 595 F.3d 26, 29-30 (1st Cir. 2010) ("§ 1681s-2(b) claim requires plaintiff to show

actual inaccuracies that a furnisher's objectively reasonable investigation would have been able

to discover"); *Gormon v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009)

("Requiring furnishers, on inquiry by a CRA, to conduct at least a reasonable, non-cursory

investigation comports with the aim of the statute"); *Westra v. Credit Control of Pinellas*, 409

F.3d 825, 827 (7th Cir. 2005) (question is whether "a defendant's investigation is reasonable"

under § 1681s-2(b)); *Johnson v. MBNA Am. Bank*, 357 F.3d 426, 431 (4th Cir. 2004) ("We

therefore hold that § 1681s-2(b)(1) requires creditors, after receiving notice of a consumer

dispute from a credit reporting agency, to conduct a reasonable investigation of their records to

determine whether the dispute information can be verified"). As succinctly explained by the

Fourth Circuit:

> § 1681s-2(b)(1)(A) uses the term "investigation" in the context of articulating a
> creditor's duties in the consumer dispute process outlined by the FCRA. It would
> make little sense to conclude that, in creating a system intended to give consumers
> a means to dispute – and, ultimately, correct – inaccurate information on their
> credit reports, Congress used the term "investigation" to include
> superficial, *un* reasonable inquiries by creditors.

*Johnson*, *supra*, 357 F.3d at 430-431. Thus, it is beyond refute that any investigation under 15

U.S.C. § 1681s-2(b) must be a "reasonable" one. *See Anderson*, *supra*, 631 F.3d at 908-909;

*Bruce v. First U.S.A. Bank, 103 F.Supp. 2d 1135, 1143* (E.D. Mo. 2000); *Hurocy v. Direct*

*Merchants Credit Card Bank*, 371 F.Supp. 2d 1058, 1060 (E.D. Mo. 2005); *Zotta v.*

*Nationscredit Fin. Serv.*, 297 F.Supp. 2d 1196, 1203-1204 (E.D. Mo. 2003).

   As discussed above, Mr. Hendricks has been acknowledged as particularly suited to

provide qualified and reliable expert testimony "regarding the reasonableness of [a furnisher

defendant's] investigations" under 15 U.S.C. § 1681s-2(b), because he can address the furnisher's actions (or lack thereof) "in light of the regulatory framework of the FCRA[,]" not to draw legal conclusions for the jury but rather "as an explanation why [Defendant's] cursory investigation in response to the dispute verification requests was deficient." *Daugherty, supra,* 701 Fed. Appx. at *55. This reasoning is perfectly applicable here, and Defendant's arguments to the contrary should be summarily rejected.

## IV.   <u>CONCLUSION.</u>

Evan Hendricks is a highly qualified and nationally-renowned expert on consumer credit reporting issues, whose expert testimony has been acknowledged as reliable and helpful by virtually every legislative and regulatory body with any oversight of the FCRA, as well as by numerous Federal and State courts around the country on topics ranging from the background and context of the FCRA, specifically including the importance of accuracy and the impact and prevalence of identity theft, to the various regulatory and industry standards at play, and the foreseeability of certain harms to the consumer when false information is reported about her.

Defendant fails to identify a single credible challenge to Mr. Hendricks' qualifications, experience, specialized knowledge and/or reliability with respect to any of his opinions to be offered in this case. As such, Defendant's motion to exclude Mr. Hendricks' testimony should be denied in its entirety.

Dated: August 29, 2019                    Respectfully submitted,

                                */s/ Sylvia A. Goldsmith*
                                Sylvia A. Goldsmith (#0064871)
                                **GOLDSMITH LAW OFFICE**
                                Park West Building
                                20545 Center Ridge Road, Suite 415
                                Rocky River, OH 44116
                                Telephone: 440-934-3025
                                Facsimile:  440-934-3026
                                Email: goldsmith@goldsmithlawyers.com

                                Robert T. Healey (EDMO # 34138MO)
                                **HEALEY LAW, LLC**
                                640 Cepi Drive, Suite A
                                Chesterfield, MO 63005
                                Telephone: 314 401-3261
                                Facsimile:  636 590-2882
                                Email: bob@healeylawllc.com

                                *Attorneys for Plaintiff,*
                                *Amber J. Cramer*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing *Plaintiff's Response In Opposition To Defendant's Motion To Exclude The Testimony Of Evan Hendricks* is being filed electronically on the 29th day of August, 2019. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

                                */s/ Sylvia A. Goldsmith*
                                Sylvia A. Goldsmith, Esq.

                                *Attorney for Plaintiff,*
                                *Amber J. Cramer*