**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMBER J. CRAMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18-CV-1078 CAS |
| | ) |
| EQUIFAX INFORMATION SERVICES, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendant Bay Area Credit Service, LLC's motions to exclude the testimony of Dr. Stan Smith (Doc. 80) and Evan Hendricks (Doc. 82). Plaintiff Amber Cramer opposes both motions. For the following reasons, the motions will be granted in part and denied in part.

**I.      Background**

On July 2, 2018, plaintiff filed a six-count petition against defendants Equifax Information Services, LLC ("Equifax"), Bay Area Credit Service, LLC ("Bay Area"), and Consumer Collection Management, Inc. ("CCM") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq. On January 28, 2019, plaintiff filed a joint stipulation of dismissal with prejudice as to defendant CCM, which the Court granted. (Docs. 41, 42). On June 18, 2019, plaintiff filed a stipulation of dismissal with prejudice as to defendant Equifax, which the Court granted. (Docs. 68, 70). The only remaining claims in this action are the FDCPA (Count II) and FCRA (Count IV) claims against defendant Bay Area.

Plaintiff alleges that in July of 2017, she discovered inaccurate delinquent accounts on her credit report regarding three unpaid medical bills from SLUCare, St. Alexius Hospital, and American Medical Response. After investigating these charges, plaintiff discovered that an individual she does not know used plaintiff's name, date of birth, and social security number in December of 2016 to incur those charges. Plaintiff filed identity theft police reports, disputed the debts with the major credit reporting agencies, and added a fraud alert to her credit report. Despite plaintiff's efforts to remove the false information, defendant Bay Area allegedly continued to contact her on her cell phone to collect on the American Medical debt. Plaintiff alleges the collection attempts persisted even after she had advised Bay Area's representatives that she was the victim of identity theft.

In Count II, plaintiff asserts defendant Bay Area violated the FDCPA by making false, misleading, and deceptive statements in an effort to collect the debt; continuing to list the debt on plaintiff's credit report even after it was aware of facts demonstrating the debt was the result of identity theft; and using unfair and unconscionable means to collect the debt. Count II seeks actual damages, statutory damages, and costs and attorney's fees.

In Count IV, plaintiff asserts defendant Bay Area violated the FCRA by willfully and negligently failing to investigate the dispute and delete the debt from its reports despite knowing or having reason to know it was inaccurate. Count IV seeks actual damages, statutory damages, punitive damages, and costs and attorney's fees.

To prove Bay Area's alleged noncompliance with the FCRA and the resulting damages, plaintiff intends to offer the testimony of Dr. Stan Smith and Evan Hendricks as expert witnesses. Bay Area moves to exclude the testimony of both experts.

## II.     Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702. In <u>Daubert v. Merrell Dow Pharms., Inc.</u>, the United States Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." 509 U.S. 579, 589 (1993). The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." <u>Id.</u> at 592-93.

The Eighth Circuit Court of Appeals has stated that proposed expert testimony must meet three criteria to be admissible under Rule 702.  "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." <u>Lauzon v. Senco Prods., Inc.</u>, 270 F.3d 681, 686 (8th Cir. 2001). "Second, the proposed witness must be qualified to assist the finder of fact." <u>Id.</u> (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." <u>Id.</u> (internal quotation marks omitted). To meet the third requirement, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods," and the expert must have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).

"Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony[,]" <u>Weisgram v. Marley Co.</u>, 169 F.3d 514, 523 (8th Cir. 1999), and "favors admissibility if the testimony will assist the trier of fact." <u>Clark ex rel. Clark v. Heidrick</u>, 150 F.3d 912, 915 (8th

Cir. 1998). Doubt regarding "whether an expert's testimony will be useful should generally be resolved in favor of admissibility." Id. (citation and internal quotation omitted).

Under Rule 702, the trial court has gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999) (citing Daubert, 509 U.S. at 597). "When making the reliability and relevancy determinations, a district court may consider: (1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." Russell v. Whirlpool Corp., 702 F.3d 450, 457 (8th Cir. 2012) (citing Daubert, 509 U.S. at 593-94). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject Daubert factors as the particular case demands." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005). "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id.

### III. Discussion

#### A. Motion to Exclude the Testimony of Evan Hendricks

Plaintiff will offer Mr. Hendricks to provide testimony regarding: (1) industry standards for furnishers, such as defendant Bay Area, to report accurate information to consumer reporting agencies and investigate consumer disputes; (2) the ways in which defendant Bay Area's response to plaintiff's credit dispute violated industry standards and/or the FCRA; and (3) the negative impacts from credit inaccuracy, such as emotional distress.

Defendant argues Mr. Hendricks is not qualified to testify about its internal debt reporting procedures because he does not have any education or training related to the operation of a consumer reporting agency, has never been employed by a consumer reporting agency, and has never been involved in an FCRA investigation following a consumer dispute on behalf of a credit reporting agency. Defendant also seeks to exclude the testimony of Mr. Hendricks because: (1) the FCRA does not require Bay Area to perform a "reasonable investigation" into a credit dispute and any testimony by Mr. Hendricks regarding that standard is irrelevant and prejudicial for the jury; (2) there is no private cause of action under the FCRA for failure to report accurate information, thus, any testimony regarding that duty is irrelevant and prejudicial for the jury; (3) his opinion that Bay Area did not conduct an appropriate investigation is an interpretation of the evidence that can only be made by a jury; and (4) Mr. Hendricks is not a medical professional who can testify as to plaintiff's emotional distress and corresponding damages.

Plaintiff responds with information supporting Mr. Hendricks as an expert in the consumer reporting industry. Plaintiff cites to seventeen FCRA-related federal and state cases in which Mr. Hendricks testified as an expert, references Mr. Hendricks's numerous publications on consumer reporting issues, and highlights the fact that he has testified several times before Congress on FCRA issues. Plaintiff also responds that Mr. Hendricks does not offer legal conclusions or opinions, but instead offers admissible opinions based on his extensive specialized knowledge and experience concerning industry standards for reasonable investigations into credit disputes.

Upon consideration of the parties' arguments and Mr. Hendricks's Curriculum Vitae attached to his Expert Report (Doc. 83-2), the Court finds Mr. Hendricks is qualified to serve as an expert in

this case. As plaintiff notes, Mr. Hendricks has been qualified as an expert witness in numerous cases involving credit reporting, including this Court, which described his qualifications as follows:

> For thirty-three years, Hendricks researched, wrote, edited, and published a bi-weekly newsletter covering various aspects of the FCRA. For ten years, he served as a privacy expert consultant for the Social Security Administration, where he reviewed policies and practices regarding use and disclosure of personal data. Hendricks also has a FCRA certification from the National Credit Reporting Association. Additionally, Hendricks has testified about the FCRA and related matters before the United States House Financial Services Committee and Senate Banking Committee, and has been admitted as an expert witness to testify on similar matters in both state and federal courts. These experiences qualify Hendricks to offer expert witness testimony of certain topics in this case.

McDonough v. JPMorgan Chase Bank, N.A., 2016 WL 4944099, at *2 (E.D. Mo. Sept. 16, 2016) (quoting Zabriskie v. Fed. Nat'l Mortg. Ass'n, 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016)); see also Ma v. Equifax Info. Servs., LLC, 288 F. Supp. 3d 1360, 1366 (N.D. Ga. Dec. 13, 2017) (finding Mr. Hendricks to be an expert qualified to discuss the type of reasonable procedures a credit furnisher should implement to assure maximum possible accuracy when reporting credit history). However, although Mr. Hendricks is qualified to offer expert witness testimony in this case, he will be limited to certain topics as discussed below.

As an industry expert, Mr. Hendricks may testify about the relevant industry practices for reporting and investigating consumer credit data, including whether the industry generally applies a "reasonable" investigation standard into consumer credit disputes, the relevant practices for reporting accurate credit data, and how Bay Area's actions in connection with plaintiff's credit dispute comport with those industry standards. See Johnson v. Mead Johnson & Co., LLC, 753 F.3d 557, 562 (8th Cir. 2014) (as long as expert's testimony rests upon "good grounds, based on what is known" it should be tested by adversary process with competing expert testimony and cross-examination, rather than excluded by court at outset); see also Zabriskie, 2016 WL 3653512,

at *2 (permitting Mr. Hendricks to testify about the relevant industry standards for reporting consumer credit data and how a company's procedures comport with those standards because "a layperson is not likely to have independent knowledge of the intricacies of how consumer reports are typically interpreted and Mr. Hendricks's specialized knowledge on this topic will assist the trier of fact.").

Mr. Hendricks, however, will not be permitted to render a legal analysis or conclusions of law, which include any opinions on whether Bay Area's conduct failed to conform to a particular legal standard, as this is an ultimate issue that should be decided by the jury. See McDonough, 2016 WL 4944099, at *2; Peters v. Woodbury County, Ia., 979 F.Supp.2d 901, 921-23 (N.D. Iowa Oct. 25, 2013) (experts cannot give opinions as to the applicable law, or as to whether a party met or failed to meet applicable legal standards). Thus, Mr. Hendricks may not provide opinions as to whether Bay Area's actions were "unreasonable, unreliable, inadequate, negligent, willful, or in any other manner violative of the FCRA." McDonough, 2016 WL 4944099, at *3 (citing Fed. R. Evid. 704(a); and Am. Auto. Ins. Co. v. Omega Flex, Inc., 783 F.3d 720, 725 (8th Cir. 2015) (courts must guard against invading province of jury on question which jury is entirely capable of answering without benefit of expert opinion)).

However, "[a]n expert does not invade the court's authority by discoursing broadly over the entire range of the applicable law where the opinion is focused on a specific question of fact." Ma, 288 F. Supp. 3d at 1367. For example, "Hendricks may reference FCRA and industry standards in testifying about the credit reporting industry, [d]efendant's conduct, and perceived issues with [d]efendant's processes and procedures. But in doing so, Hendricks must avoid expressing ultimate legal conclusions regarding the reasonableness of Defendant's procedures for ensuring maximum

possible accuracy and conducting reinvestigations of credit report disputes." Anderson v. Equifax Info. Servs., LLC, 2018 WL 1542322, at *6 (D. Kan. Mar. 29, 2018).

Mr. Hendricks may not render opinions regarding plaintiff's alleged emotional distress and corresponding damages. As this Court has previously stated, Mr. Hendricks is "not qualified to provide medical opinions" and, as such, "he will not be permitted to render an opinion as to whether [defendant's] conduct has caused [plaintiff] emotional distress, and he will be precluded from providing any opinions regarding the types of damages that are common to victims who have suffered emotional distress under comparable circumstances as [plaintiff]." McDonough, 2016 WL 4944099, at *2.

Moreover, nowhere in the record does it reflect that Mr. Hendricks is an accountant, economist, or financial planner with the requisite specialized knowledge or experience to opine on damages that flow from false credit reports. See, e.g., Valenzuela v. Equifax Info. Servs. LLC, 2015 WL 6811585, at *3 (D. Ariz. Nov. 6, 2015) ("Hendricks is not qualified to address physical, emotional, or economic effects of an inaccurate credit report."); Anderson, 2018 WL 1542322, at *5 ("Hendricks does not possess specialized training or experience in a field such as medicine, psychology, or economics that would qualify him to opine about whether Plaintiff has incurred certain types of injuries.").

      **B.**    **Motion to Exclude the Testimony of Dr. Stan Smith**

Plaintiff will offer Dr. Smith to provide economic testimony concerning the value of damages plaintiff allegedly suffered as a result of defendant Bay Area's actions. These damages include: (1) the loss of credit expectancy; (2) the value of time spent dealing with the situation; and (3) the reduction in value of life, also known as loss of enjoyment of life or hedonic damages. Doc. 81-3.

Defendant first argues that Dr. Smith's testimony should be excluded because plaintiff failed to plead special, non-economic damages in her complaint or otherwise inform defendant that she sought special damages prior to designating her expert witnesses. In response, plaintiff cites to three paragraphs in her complaint, her Rule 26(a)(1) initial disclosures, and her answers to interrogatories where she references her alleged special, non-economic damages, including emotional distress. In further support for the inclusion of Dr. Smith's testimony, plaintiff argues the FCRA allows for the recovery of special, non-economic damages as actual damages, which she specifically pled in Counts II and IV against defendant.

The Court agrees with plaintiff and will not exclude Dr. Smith's testimony on this basis. Plaintiff pled actual damages in her complaint and the FCRA permits recovery for special, non-economic damages as actual damages. As the Third Circuit has explained,

> [The FCRA] is not legislation mandating a safety standard to prevent physical injury. It is legislation designed to facilitate banking and the extension of credit while protecting consumers from the kind of injury that will almost certainly result when erroneous information is inserted into a credit report. Thus, damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses.

Cortez v. Trans Union, LLC, 617 F.3d 688, 719 (3d Cir. 2010); see also Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir. 1998) (plaintiffs' failure to produce any actual out-of-pocket expenses or costs incurred as result of defendant's willful conduct did not preclude award of actual and punitive damages for FCRA violations, where plaintiffs testified about how they felt when defendant obtained their credit reports and violated their privacy, thereby causing them some emotional distress); Stevenson v. TRW Inc., 987 F.2d 288, 296 (5th Cir. 1993) ("Actual damages [under the FCRA] include humiliation or mental distress, even if the consumer has suffered no out-of-pocket losses.").

As to Dr. Smith's testimony regarding loss of credit expectancy, defendant argues this testimony should be excluded because Dr. Smith is not qualified, his conclusions lack evidentiary support, and absent being denied credit due to the erroneous credit report, plaintiff cannot recover such damages. Plaintiff does not respond to defendant's arguments regarding loss of credit expectancy.

The Court cannot agree that Dr. Smith is not qualified to testify as to damages attributable to lost credit expectancy. Dr. Smith's Curriculum Vitae evidences him as an expert in economics. After earning his Ph.D. in economics from the University of Chicago, Dr. Smith has published dozens of articles regarding economic losses, including credit damage, in peer-reviewed journals, has testified as a forensic economic expert in numerous lawsuits, and participated in national presentations regarding the topics of how to estimate credit damages, the economics of credit damages, and litigating accuracy issues with furnishers of credit data. (Doc. 88-7). These experiences qualify Dr. Smith to offer expert witness testimony in this case with certain limitations discussed below.

Dr. Smith's report acknowledges that plaintiff "has not been denied for credit since these delinquent and fraudulent accounts showed up on her credit record" and she has not tried to buy a house or apply for a mortgage. Doc. 81-3 at 4. However, Dr. Smith attributes her inability to field a better car insurance rate, which at the time was $78 per month, to defendant Bay Area's erroneous reports. Id. Plaintiff's complaint does not allege that she was denied approval for a credit card, loan, or a mortgage; however, her opposition states that she chose not to shop for a home mortgage as a result of her unsuccessful efforts to obtain a reasonable car insurance quote. Doc. 88 at 3. Dr. Smith concludes that because plaintiff "had good credit prior to the identity theft and defendant's

wrongful actions and would have the ability to borrow sums beyond her current lines of credit but for the damage she suffered in response to this identity theft," her estimated loss of credit expectancy damages is $100,000.

The facts surrounding plaintiff's credit expectancy are relevant and technical. In dispositive motions or at trial, plaintiff could establish the basis for Dr. Smith's conclusions and present evidence supporting some tangible loss of credit expectancy giving rise to damages. Therefore, the Court will deny defendant's motion with respect to such testimony, although defendant is free to raise further objections at a later stage of the case. See Anastasion v. Credit Service of Logan, Inc., 2011 WL 4826102, at *1 (D. Utah Oct. 5, 2011) (holding plaintiff could establish a basis for Dr. Smith's testimony regarding loss of credit expectancy after plaintiff has opportunity to present evidence of such damages) (citing Cortez, 617 F.3d at 719; and Stevenson, 987 F.2d at 296). Thus, Dr. Smith's testimony addressing loss of credit expectancy damages will not be excluded.

As to Dr. Smith's testimony regarding value of time spent, defendant argues this testimony should be excluded because plaintiff cannot recover the value of time spent and, even if such damages were recoverable, calculating the value of time spent does not require expert testimony. Plaintiff does not respond, but the Court disagrees with defendant's position and will not exclude Dr. Smith's testimony regarding these damages. "[T]here is case law establishing that, when calculating damages for a violation of the FCRA, 'time spent trying to resolve problems with the credit reporting agency' may be considered as support for a claim for mental distress.'" See Anastasion, 2011 WL 4826102, at *1 (declining to exclude Dr. Smith's testimony regarding time spent damages and advising defendant it is "free to raise further objections to this testimony at

11

trial."); Cortez, 617 F.3d at 719 (citing Stevenson, 987 F.2d at 297 (time spent trying to resolve problems with the credit reporting agency is a viable damage in FCRA litigation)).

Lastly, as to Dr. Smith's testimony regarding loss of enjoyment of life (also known as "hedonic" damages), defendant argues this testimony should be excluded because no factual basis supports the existence of these damages and his methodology based on a "willingness to pay model" is flawed. The Court finds that the recovery of hedonic damages is not appropriate here. "Hedonic damages are used to approximate the loss of the value of life, and therefore are used in cases involving death or injury." Anastasion, 2011 WL 4826102, at *1. Here, plaintiff alleges she was damaged as a result of an inaccurate credit report, not that she suffered a physical injury or loss of life. Thus, expert testimony regarding these damages would be unhelpful and confusing for a jury.

Moreover, even if hedonic damages were appropriate in an FCRA case, plaintiff has not shown that Dr. Smith's testimony is necessary or reliable in assisting the trier of fact to understand or determine a fact in issue in this case. See Saia v. Sears Roebuck & Co., 47 F. Supp. 2d 141, 149 (D. Mass. 1999) (expert testimony on hedonic damages, purporting to calculate injured plaintiff's loss of enjoyment of life based on "willingness to pay" model which considered consumer behavior, wage risk premiums, and regulatory cost-benefit analysis, was unreliable whether evaluated as scientific or as "technical or other specialized" knowledge) (citing to various federal courts rejecting expert testimony on hedonic damages, in particular Dr. Smith's); see also Allen v. Bank of Am., N.A., 933 F. Supp. 2d 716, 734 (D. Md. 2013) ("The court is not convinced that an expert whose opinion is based almost entirely on asking laypersons how a particular event has affected their enjoyment of life would provide any assistance to the jury in making that determination for themselves."); Kurncz v. Honda N. Am., Inc., 166 F.R.D. 386, 388 (W.D. Mich. 1996) ("The

willingness to pay model on the issue of calculating hedonic damages is a troubled science in the courtroom, with the vast majority of published opinions rejecting the evidence."). For these reasons, Dr. Smith's testimony regarding hedonic damages will be excluded.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bay Area Credit Service, LLC's Motion to Exclude the Testimony of Evan Hendricks is **GRANTED in part** and **DENIED in part**. [Doc. 82] The motion is **GRANTED** to the extent that Mr. Hendricks will not be permitted to: (1) give any testimony which states a legal analysis or conclusion of law, including opinions on whether defendant Bay Area Credit Service, LLC's conduct failed to conform to a particular legal standard; (2) render any opinions regarding plaintiff's alleged emotional distress; or (3) provide testimony regarding damages, including those arising from plaintiff's alleged emotional distress or the economic effects of an inaccurate credit report. The motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant Bay Area Credit Service, LLC's Motion to Exclude the Testimony of Dr. Stan Smith is **GRANTED in part** and **DENIED in part**. [Doc. 80] The motion is **GRANTED** to the extent that Dr. Smith will not be permitted to give any testimony regarding loss of enjoyment of life damages, also known as hedonic damages. The motion is **DENIED** in all other respects.

_/s/ Charles A. Shaw_
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>18th</u> day of September, 2019.