# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| AMBER J. CRAMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-CV-1078 CAS |
| EQUIFAX INFORMATION SERVICES, LLC, et al., | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Bay Area Credit Service, LLC's motion for summary judgment. Doc. 76. Plaintiff Amber Cramer opposes the motion and it is fully briefed. For the following reasons, the motion will be granted.

**I.     Background**

On July 2, 2018, plaintiff filed a six-count complaint against defendants Equifax Information Services, LLC ("Equifax"), Bay Area Credit Service, LLC ("Bay Area"), and Consumer Collection Management, Inc. ("CCM") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227 et seq. On January 28, 2019, plaintiff filed a joint stipulation of dismissal with prejudice as to defendant CCM. Docs. 41, 42. On June 18, 2019, plaintiff filed a stipulation of dismissal with prejudice as to defendant Equifax, which the Court construed as a motion for leave to voluntarily dismiss with prejudice, and granted. Docs. 68, 70. The only remaining claims in this action are the FDCPA (Count II) and FCRA (Count IV) claims against defendant Bay Area.

In Count II, plaintiff asserts defendant Bay Area violated the FDCPA by making false, misleading, and deceptive statements in an effort to collect a debt; continuing to list a debt on plaintiff's credit report even after it was aware of facts demonstrating the debt was the result of identity theft; and using unfair and unconscionable means to collect a debt. Count II seeks actual damages, statutory damages, costs, and attorney's fees.

In Count IV, plaintiff asserts defendant Bay Area violated the FCRA by willfully and negligently failing to investigate her credit dispute and delete the debt from its reports despite knowing or having reason to know it was inaccurate. Count IV seeks actual damages, statutory damages, punitive damages, costs, and attorney's fees.

## II.     Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in her pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of

material fact exists. Fed.R.Civ.P. 56(e); Herring v. Canada Life Assur. Co., 207 F.3d 1026, 1029 (8th Cir. 2000); Allen v. Entergy Corp., 181 F.3d 902, 904 (8th Cir. 2000). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Herring, 207 F.3d at 1029 (quoting Anderson, 477 U.S. at 248). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. See Crossley v. Georgia-Pacific Corp., 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. See Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006).

With this standard in mind, the Court accepts the facts below as true for purposes of resolving this motion for summary judgment.

### III. Facts

On December 23, 2016, an individual appeared at St. Alexius Hospital in St. Louis, Missouri for emergency drug overdose treatment. This individual provided plaintiff's correct name, social security number, and date of birth. The address this individual provided was not where plaintiff then currently or previously resided. As a result of the treatment, three separate debts became due to three separate medical providers: (1) Golden Arch Emergency Physicians ("Golden Arch"); (2) American Medical Response ("AMR"); and (3) SLUCare ("SLU"). After the debts became delinquent, Bay Area was hired by two medical providers to collect on the Golden Arch and AMR debts.

Plaintiff reviewed her credit score in July of 2017 and discovered the three delinquent debts. Plaintiff filed a police report with the Columbia, Missouri Police Department alleging identity theft. On July 14, 2017, plaintiff received a call on her cell phone from Roger Rex, a representative of Bay Area. The telephone transcript evidences that Mr. Rex informed plaintiff he was attempting to collect a $1,505.00 debt for Golden Arch arising out of medical services provided on December 23, 2016 at St. Alexius Hospital. Plaintiff stated the charge was a result of fraud and a police report had been filed. In response, Mr. Rex told plaintiff: "So, no issues, what I'll do for you is I'll take this as an identity theft and let my client know that it needs investigation and needs to be kept on hold." Doc. 79-6. The transcript does not reflect a discussion of any debt other than the one specifically owed to Golden Arch. The AMR debt was not mentioned by either party. After the July 14, 2017 phone call, Bay Area asserts and plaintiff does not dispute that Bay Area ceased all efforts to collect on the debt owed to Golden Arch and never reported the debt to a consumer reporting agency.

In September of 2017, defendant Bay Area first reported the AMR debt of $792.00 to the three national consumer reporting agencies, Equifax, TransUnion, and Experian (the "CRAs"). By letter dated November 8, 2017, plaintiff submitted a written dispute of the AMR debt to the three CRAs. Plaintiff did not send a copy of the dispute letter to Bay Area. On November 19, 2017, Bay Area received an Automated Consumer Dispute Verification from Equifax forwarding plaintiff's written dispute of the AMR debt.

Following receipt of a dispute from a CRA, Bay Area's policy is to match the demographic information of the consumer to the information on the debt to determine if it is the same person, including verifying the social security number and date of birth. When Bay Area received plaintiff's dispute on November 19, 2017, plaintiff's demographic information matched the information

4

attached to the AMR debt. Despite the match, Bay Area ceased its collection efforts. From November 24, 2017 to July 13, 2018, defendant Bay Area continued to report the AMR debt to the CRAs, but indicated in its reports that the debt was disputed.

## IV. Discussion

### A. Summary Judgment is Appropriate as to the FDCPA claims.

Plaintiff's alleges Bay Area violated four specific provisions of the FDCPA as follows:

(a) 15 U.S.C. § 1692e: Bay Area made false, misleading, and/or deceptive statements in an effort to collect a debt,

(b) 15 U.S.C. § 1692e(2): Bay Area placed a debt trade line on plaintiff's credit report which asserted plaintiff owed the AMR debt when no such obligation existed and continues to list this debt even though Bay Area is aware of facts demonstrating that the debt is the result of identity theft,

(c) 15 U.S.C. § 1692e(8): Bay Area listed the AMR debt as a delinquent debt on plaintiff's credit report even though Bay Area was aware of facts demonstrating that the debt was the result of identity theft, and

(d) 15 U.S.C. § 1692f: Bay Area used unfair and unconscionable means to collect the debt.

#### 1. Plaintiff's § 1692e claim is duplicative of her § 1692e(8) claim.

Defendant Bay Area argues it should be granted summary judgment on plaintiff's § 1692e claim because it is duplicative of her § 1692e(8) claim. Section 1692e prohibits the use of "any false, deceptive, or misleading representation . . . in connection with the collection of any debt" and enumerates in sixteen subsections specific practices that fall within its prohibition. Section 1692e provides that "[w]ithout limiting [its] general application," the conduct in each subsection is a violation. Section 1692e(8) provides that a debt collector may not "communicat[e] . . . to any person

credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

Bay Area argues the alleged facts underlying plaintiff's § 1692e claim do not differ from the alleged facts underlying her § 1692e(8) claim, specifically that defendant knew or should have known from its phone call with plaintiff on July 14, 2017 that the AMR debt was related to the Golden Arch debt and should not have been reported to the CRAs.  Bay Area argues that because the two claims are duplicative, the Court should dismiss the more general claim under § 1692e. Plaintiff's response did not offer a counter argument as to how the facts of this case support both claims or provide any case law to support how the two claims are not duplicative.

There is no prohibition against pursuing a claim under both a generalized section of the FDCPA and its subsection.  See, e.g., Neu v. Genpact Services, LLC, 2013 WL 1773822, at *3 (S.D. Cal. Apr. 25, 2013) ("A plaintiff may ordinarily pursue claims under both § 1692d and § 1692d(5).") (citations omitted); Michalek v. ARS Nat. Sys., Inc., 2011 WL 6180498, at *3 (M.D. Pa. Dec. 13, 2011) (plaintiff can pursue two claims under the same FDCPA subsection when they are "coextensive").

However, if "after finding a valid claim under a more specific subsection of § 1692e . . . further analysis . . . is somewhat duplicative." Chulsky v. Hudson Law Offices, P.C., 777 F. Supp. 2d 823, 832 (D.N.J. Mar. 22, 2011) (quoting Gervais v. Riddle & Assocs., P.C., 479 F. Supp. 2d 270, 276 (D. Conn. Mar. 19, 2007) (citations omitted)).  When an FDCPA claim under a subsection is duplicative of the claim under the generalized section, a court may determine that the more specific FDCPA provision should be analyzed and the other dismissed.  See e.g., Hendricks v. CBE Grp., Inc., 891 F. Supp. 2d 892, 896 (N.D. Ill. Apr. 10, 2012) (plaintiff brought claims under §§ 1692d and

1692d(5) of the FDCPA and the court held that because plaintiff did not allege any conduct under § 1692d, only § 1692d(5) would be analyzed in the motion for summary judgment); Neu, 2013 WL 1773822, at *3 (while a plaintiff may pursue claims under a general section and its subsection, where the facts fit "entirely within" the "more specific FDCPA provision, [the specific provision] governs the case.").

The Court will dismiss plaintiff's § 1692e claim because it is duplicative of her § 1692e(8) claim in that both are based on the exact same facts and plaintiff does not argue otherwise. The undisputed facts underlying both § 1692e and § 1692e(8) are based on plaintiff's July 14, 2017 phone call with a representative of Bay Area, in which plaintiff verbally informed Bay Area that the Golden Arch debt was the result of identity theft. The facts further evidence that while Bay Area discontinued its efforts to collect or report the Golden Arch debt, it later reported the AMR debt as due and owing. This alleged conduct by Bay Area fits more squarely under § 1692e(8)'s prohibition on "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed," rather than § 1692e's general prohibition on the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." Thus, Bay Area's motion for summary judgment as to plaintiff's claim under § 1692e will be granted.

2. **Plaintiff's § 1692e(2) claim is duplicative of her § 1692e(8) claim.**

Defendant Bay Area argues it should be granted summary judgment on plaintiff's claim under § 1692e(2), which prohibits the "false representation of the character, amount, or legal status of any debt" because it is duplicative of § 1692e(8), which, as discussed above, makes it illegal for

debt collectors to communicate to any person credit information which is known or which should be known to be false.

Plaintiff alleges Bay Area violated § 1692e(2) when it placed a debt trade line on plaintiff's credit report which asserted plaintiff owed the AMR debt when no such obligation existed even though Bay Area was aware of facts demonstrating that the debt was the result of identity theft.[1] Plaintiff alleges Bay Area violated § 1692e(8) when it listed the AMR debt as a delinquent debt on plaintiff's credit report, even though Bay Area was aware of facts demonstrating the debt was the result of identity theft. These are identical allegations sharing the same supporting facts and they more aptly fit under § 1692e(8), which "applies to the 'communicating' of 'credit information.' 'Communication' is defined as 'the conveying of information regarding a debt directly or indirectly to any person through any medium.'" Wilhelm v. Credico, Inc., 519 F.3d 416, 418 (8th Cir. 2008) (quoting § 1692a(2)). By listing or placing the debt on plaintiff's credit report as delinquent, Bay Area was "communicating" information that the AMR debt was due and owing when plaintiff allegedly disputed it on July 14, 2017 when she disputed the Golden Arch debt.

Courts have not permitted claims to go forward under multiple subsections of 1692e(2) "if the claim does not identify any misconduct beyond that which plaintiff asserts violated other provisions of the FDCPA." Higgens v. Trident Asset Mgmt., LLC, 2017 WL 7796085, at *2 (S.D. Fla. July 21, 2017) (quoting Anselmi v. Shendell & Assocs., P.A., 2015 WL 11121357, at *5 (S.D. Fla. Jan. 7, 2015), and citing Gostony v. Diem Corp., 320 F. Supp. 2d 932, 942 (D. Ariz. Aug. 28, 2003)) (finding allegations under § 1692e(8) insufficient to constitute violations under §§ 1692e(2)

---

[1] "A trade line is an account listed on a credit report. Each separate account constitutes a different trade line." Haddad v. Charles Riley & Assocs., Inc., 2010 WL 3906955, at *2 (E.D. Mich. Apr. 12, 2010).

or 1692e(10)); Wideman v. Monterey Fin. Servs., Inc., 2009 WL 1292830, at *3 (W.D. Pa. May 7, 2009) (noting that where a claim under § 1692e(10) is merely a "reallegation" of another claim under § 1692e, it should be dismissed)). Plaintiff's response did not offer a counter argument as to how the facts of this case support both claims or provide any case law to establish how the two claims are not duplicative or a reallegation of the same claim. Thus, Bay Area's motion for summary judgment as to plaintiff's claim under § 1692e(2) will be granted.

### 3. Plaintiff's § 1692f claim is duplicative of § 1692e(8)

Defendant Bay Area argues it should be granted summary judgment on plaintiff's claim under § 1692f because it is a catch-all provision and duplicative of plaintiff's allegations under § 1692e(8). Specifically, Bay Area argues that because plaintiff did not allege any additional or distinct facts to support her § 1692f claim, separate from the facts alleging Bay Area violated more specific FDCPA provisions, this claim must be dismissed. Plaintiff responds that the undisputed facts show she advised Bay Area she was "a victim of fraud specifically in connection with medical services provided at St. Alexius Hospital on December 23, 2016, yet [defendant] chose not to know what was in its own records in pursuit of a 'different' medical debt that arose from the same location on the same date" and, thus, a "jury could find [d]efendant's conduct in this regard to be unfair or unconscionable in violation of Section 1692f." Doc. 93 at 15.

Section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA." Spehr v. Seterus, Inc., 2019 WL 4246929, at *6 (E.D. Mo. Sept. 6, 2019) (quoting Hanks v. Valarity, LLC, 2015 WL 1886960, at *4 (E.D. Mo. Apr. 24, 2015)). "Section 1692f lists eight types of prohibited conduct; however, it is clear from the

9

statute itself that conduct that may be deemed unfair or unconscionable is not limited to the acts enumerated in subsections (1) through (8)." Id. (citation omitted). "A § 1692f claim may not duplicate claims brought under other FDCPA sections and fails as a matter of law where 'all [of] the allegations in the Complaint support claims asserted under either §§ 1692g or 1692e.'" Miles v. Retrieval-Masters Creditor's Bureau, Inc., 2016 WL 1258481, at *4 (E.D.N.Y. Mar. 29, 2016) (quoting Bieder v. Retrieval Masters Creditors Bureau, Inc., 2015 WL 7454119, at *4 (E.D.N.Y. Nov. 24, 2015)); see also Turner v. Professional Recovery Services, Inc., 956 F. Supp. 2d 573, 581 (D.N.J. July 9, 2013) (dismissing a claim under § 1692f at the summary judgment stage as "redundant" where the plaintiff's other claims were "specifically addressed" by other provisions of the FDCPA).

To the extent plaintiff makes a claim under § 1692f's general prohibition against "unfair or unconscionable means to collect or attempt to collect any debt," it will be dismissed as duplicative. This conclusion is further supported by the fact that plaintiff does not allege a claim under a specific subsection of § 1692f. See Taylor v. Midland Funding, LLC, 2015 WL 4670314, at *8 (N.D. Ala. Aug. 6, 2015) (dismissing a claim under 1692f's catch-all provision, but permitting a claim under 1692f(1) to go forward, because "to the extent a plaintiff alleges how that conduct is unfair or unconscionable under the enumerated subsections of § 1692f, he may maintain claims for violations of both § 1692f and other provisions of the FDCPA"); cf. Cohen v. Dynamic Recovery Sols., 2016 WL 4035433, at *5 (D.N.J. July 26, 2016) (dismissing claims under Section 1692f as duplicative of claims brought under Section 1692e, but suggesting that if plaintiff had pointed to "any instance where Defendant engaged in one of the practices identified in § 1692f(1)–(8)," such a claim would

not be dismissed as duplicative). Thus, defendant's motion for summary judgment as to plaintiff's claim under § 1692f will be granted.

### 4. Plaintiff's § 1692e(8) claim is appropriate for summary judgment

Defendant Bay Area argues that plaintiff's claim under § 1692e(8) fails because it had no obligation under the FDCPA to report the AMR debt as disputed prior to receiving plaintiff's written dispute letter from Equifax on November 19, 2017. Bay Area further argues that plaintiff's verbal dispute of the Golden Arch debt to a Bay Area representative on July 14, 2017 did not impose a duty upon Bay Area to assume the Golden Arch dispute also applied to the AMR debt simply because the two charges occurred on the same day. Bay Area explains that because both debts were protected under HIPPA, 42 U.S.C. §§ 201 et seq., and because it stored the separate debts in two different databases as they were owed to two unrelated creditors, Bay Area employees could not access certain information about the two debts simultaneously and, thus, could not have known of any connection between the two debts. Plaintiff responds that defendant did have an obligation under the FDCPA to review its files and not report the AMR debt because Bay Area should have known that the AMR debt related to the disputed Golden Arch medical debt. Plaintiff does not support her argument with any case law or other authority to show that Bay Area had an affirmative duty or obligation under the FDCPA to review a debt other than the specifically disputed Golden Arch debt without a verbal or written dispute as to the AMR debt.

"The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' . . . and debt collectors are liable for failure to comply with 'any provision' of the Act." Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir. 2006) (quoting 15 U.S.C. §§ 1692(a) and 1692k(a)). In order to establish an FDCPA violation, "Plaintiff must prove that she is a consumer;

Defendant is a debt collector; there was an attempt to collect a debt; and Defendant violated, by act or omission, a provision of the FDCPA." Campbell v. Credit Protection Ass'n, 2013 WL 1282348, at *4 (E.D. Mo. Mar. 27, 2013) (citing Pace v. Portfolio Recovery Assocs., 872 F. Supp. 2d 861, 864 (W.D.Mo. June 25, 2012)). It is undisputed that plaintiff is a consumer, that Bay Area is a debt collector, and that there was an attempt to collect a debt. The only issue is whether Bay Area violated § 1692e(8).

Defendant cites to a Pennsylvania district court case, Pagan v. Monterrey Collection Services, 2007 WL 966009, at *2 (E.D. Pa. Mar. 29, 2007), to support its argument that the July 14, 2017 phone call between plaintiff and a Bay Area representative was not a proper dispute of the AMR debt because it was not in writing. This argument fails. Unlike the Second, Third, Fourth, and Ninth Circuits, which have reached differing conclusions, the Eighth Circuit has not addressed the issue of whether the FDCPA requires a consumer to dispute the validity of a debt in writing in order for a debt collector to be held liable. See Busch v. Valarity, LLC, 2014 WL 466221, at *2 (E.D. Mo. Feb. 5, 2014) (citing Graziano v. Harrison, 950 F.2d 107, 112 (3d Cir. 1991) ("any dispute, to be effective, must be in writing.")); cf. Camacho v. Bridgeport Financial, Inc., 430 F.3d 1078 (9th Cir. 2005) (written dispute not required); Hooks v. Forman, Holt, Eliades & Ravin, LLC, 717 F.3d 282 (2d Cir. 2013) (same); Clark v. Absolute Collection Service, Inc., 2014 WL 341943 (4th Cir. Jan. 31, 2014) (same). "[I]n this district—the Eastern District of Missouri—it has been held that a telephone call is a legally effective alternative for disputing the debt." Hanford v. Franklin Collection Serv., Inc., 2018 WL 2129612, at *4 (E.D. Mo. May 9, 2018) (citing Busch, 2014 WL 466221, at *2)).

Although this Court holds a consumer may dispute a debt verbally, the facts of this case are clear that plaintiff did not dispute the AMR debt, verbally or in writing, until she sent her dispute letter to the CRAs on November 8, 2017. During the July 14, 2017 phone call, plaintiff alerted a representative of Bay Area that the Golden Arch debt was a product of identity fraud. The AMR debt was not mentioned by either party. After plaintiff's verbal dispute of the Golden Arch debt, Bay Area ceased its attempts to collect on that debt and did not report it to the CRAs. On November 19, 2017, Equifax forwarded plaintiff's written dispute of the AMR debt to Bay Area. Following receipt of the dispute, Bay Area ceased its collection efforts and from November 24, 2017 to July 13, 2018 reported the AMR debt to the CRAs as disputed. There is no evidence in the record that Bay Area was notified of a dispute regarding the AMR debt, by plaintiff or a CRA, prior to November 19, 2017.

Section 1692e(8) requires a "failure to communicate that [a] disputed debt is disputed," which "is rooted in the basic fraud law principle that, if a debt collector elects to communicate credit information about a consumer, it must not omit a piece of information that is always material, namely, that *the consumer has disputed a particular debt*." Wilhelm, 519 F.3d at 418 (emphasis added); see also Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1189 (10th Cir. 2013) ("We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify CRAs that a consumer disputes the debt unless the debt collector knows of the dispute[.])").

Plaintiff has not presented any evidence that she disputed the AMR debt to Bay Area prior to her written letter to the CRAs dated November 8, 2017. Bay Area received plaintiff's written dispute from Equifax on November 19, 2017. Within five days of such notification, Bay Area

13

updated its records to flag the AMR debt as disputed. Plaintiff's argument that Bay Area should have known the Golden Arch debt was related to the AMR debt, when they are from two separate creditors, does not hold weight under the plain language of § 1692e(8) requiring the consumer to dispute the "particular debt." The undisputed facts show that plaintiff only disputed the Golden Arch debt to Bay Area on July 14, 2017 and not the AMR debt. Thus, defendant's motion for summary judgment as to plaintiff's claim under § 1692e(8) will be granted.

### B. Summary Judgment is Appropriate as to the FCRA claims.

In the Complaint, plaintiff alleges Bay Area violated the FCRA by willfully or negligently failing to investigate her dispute after it received notification from Equifax that the AMR debt was disputed due to identity theft, and continued reporting the AMR debt instead of deleting it from plaintiff's report.

Defendant Bay Area argues this claim fails as a matter of law because it conducted an acceptable investigation after receiving plaintiff's dispute from Equifax, flagged the debt as disputed, and took no further collection efforts. Bay Area states it did not remove the debt entirely from its reports because plaintiff's identifying information – name, social security number, and date of birth – matched the information on the debt as sent to it by its client, AMR. Thus, Bay Area asserts it continued to report the debt because it was "unable to definitely determine" whether plaintiff was the victim of identity theft and "did the best it could" by reporting the AMR debt as disputed so that it would no longer affect plaintiff's credit score. Doc. 97 at 5.

"The FCRA imposes civil liability on any person who willfully or negligently fails to comply with any of the Act's requirements with respect to a consumer." Hurocy v. Direct Merchants Credit Card Bank, N.A., 371 F. Supp. 2d 1058, 1059 (E.D. Mo. 2005) (citing 15 U.S.C. §§ 1681n, 1681o).

"Furnishers of information, such as defendant, have a duty to provide accurate information, § 1681s–2(a), and a duty to investigate the accuracy of reported information upon receiving notice of a dispute, 1681s–2(b)." Id. at. 1059-60.

Under the FCRA, when a CRA, such as Equifax, notifies a furnisher, such as Bay Area, of a dispute with regard to an account, the furnisher of information must: (a) conduct an investigation with respect to the disputed information; (b) review all relevant information provided by the CRA under § 1681i(a)(2); (c) report the results of the investigation to the CRA; and (d) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs. Zotta v. NationsCredit Fin. Servs. Corp., 297 F. Supp. 2d 1196, 1203 (E.D. Mo. Dec. 22, 2003) (citing 15 U.S.C. § 1681s–2(b)(1)(A)–(D)).

"The FCRA does not define the level of investigation required under § 1681s–2(b)(1). Courts have determined that furnishers of information are required to conduct a 'reasonable' investigation of a consumer's dispute regarding information contained in a credit report." Id. at 1060 (citing Bruce v. First U.S.A Bank, N.A., 103 F. Supp. 2d 1135, 1143 (E.D. Mo. June 20, 2000); Evantash v. G.E. Capital Mortgage Services, Inc., 2003 WL 22844198 (E.D. Pa. Nov. 25, 2003)); see also Anderson v. EMC Mortg. Corp., 631 F.3d 905, 908 (8th Cir. 2011) (it is a "furnisher's obligation to conduct a reasonable investigation."). The "determination whether a furnisher's investigation was 'reasonable' is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account." Daugherty v. Ocwen Loan Servicing, LLC, 701 F.App'x 246, 253 (4th Cir. 2017). "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however,

summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." Westra v. Credit Control of Pinellas, 409 F.3d 825, 827 (7th Cir. 2005) (citing Crabill v. Trans Union, L.L.C., 259 F.3d 662, 664 (7th Cir. 2001)).

The undisputed facts are that on November 8, 2017 plaintiff submitted a written dispute to Trans Union, Equifax, Experian, St. Alexius Hospital, and SLU Care regarding the AMR debt. Doc. 79-1. On November 19, 2017, Equifax sent Bay Area an Automated Consumer Dispute Verification, which informed Bay Area that plaintiff disputed the AMR debt due to "Identity Fraud." Doc. 95-19. Attached to plaintiff's dispute letter was a Federal Trade Commission ID Theft Affidavit ("FTC Affidavit) stating she did not authorize the debts owed to St. Alexis Hospital and SLU Hospital and a police report regarding the debt owed to SLU Hospital. Id. Although the FTC Affidavit and the police report did not mention the AMR debt, the documents did reflect that both the AMR debt and the other medical debts were incurred on the same date, December 23, 2016. Within five days of receiving this documentation from Equifax, Bay Area indicated in its reports to the CRAs that the AMR debt was disputed. Doc. 98 at 20.

Viewing the summary judgment record in the light most favorable to plaintiff, the Court concludes Bay Area did not willfully fail to investigate plaintiff's AMR credit dispute for identity theft. "To show willful noncompliance with the FCRA, a plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others[.]" Zotta, 297 F. Supp. 2d at 1204 (citing Phillips v. Grendahl, 312 F.3d 357, 368 (8th Cir. 2002)). Plaintiff has not produced any evidence suggesting Bay Area acted with a "conscious disregard" of her rights under the FCRA. Plaintiff admits, at minimum, Bay Area investigated the dispute by matching her personal identifiers to the information on the debt. See Westra, 409 F.3d at 827

(verifying a debtor's name, address, and date of birth is an investigation and can, in some circumstances, be sufficient under the FCRA). Plaintiff further admits Bay Area reported the AMR debt as disputed shortly after receiving the dispute letter from Equifax. See, e.g., King v. Asset Acceptance, LLC, 452 F. Supp. 2d 1272, 1280 (N.D. Ga. 2006) (the fact that furnisher continued to report an account does not evidence a willful violation of FCRA rights when there is no evidence of a furnisher's refusal to investigate, withhold information, or report knowingly inaccurate information.)

The Court also concludes that Bay Area did not negligently fail to reasonably investigate plaintiff's AMR credit dispute for identity theft. FCRA Section 15 U.S.C. § 1681i provides that after receiving information of a dispute, the furnisher has a duty to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and either "(i) *modify that item* of information; (ii) delete that item of information; *or* (iii) permanently block the reporting of that item of information." (emphases added). In this case, Bay Area reviewed the information provided to it by Equifax and responded by placing a dispute flag in its reports regarding the AMR debt, which is one of the options available to a furnisher under § 1681i. Placing a dispute flag on the debt evidences that Bay Area performed a reasonable investigation and complied with the requirements of the FCRA. See Saunders v. Branch Banking and Tr. Co. of VA, 526 F.3d 142, 150 (4th Cir. 2008) ("when a furnisher reports a dispute, its report confirms that the consumer has actually contacted the furnisher and explained that the consumer believes he does not owe the debt."). Plaintiff does not point to any authority and the Court in independent research cannot find any cases where an investigation was found to be negligent under the FCRA when a furnisher promptly modified the debt on the plaintiff's credit report, which is one of the three options available to a

furnisher when it receives a dispute from a CRA. Thus, defendant's motion for summary judgment as to plaintiff's claim under the FCRA will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Bay Area Credit Service, LLC's motion for summary judgment is **GRANTED** in all respects. [Doc. 76]

An appropriate judgment and order of dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this   15th   day of October, 2019.